1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
FARHAN MOHAMOUD TANI WARFAA,    .    Civil Action No. 1:05cv701
                                .
             Plaintiff,         .
                                .
     vs.                        .    Alexandria, Virginia
                                .    June 4, 2018
YUSUF ABDI ALI,                 .    10:58 a.m.
                                .
             Defendant.         .
                                .
. . . . . . . . . . . . . .
```

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:            LINDSAY R. BARNES, III, ESQ.
                             BENJAMIN D. KLEIN, ESQ.
                             DLA Piper LLP
                             500 Eighth Street, N.W.
                             Washington, D.C. 20004
                               and
                             L. KATHLEEN ROBERTS, ESQ.
                             Center for Justice &
                             Accountability
                             One Hallidie Plaza, Suite 406
                             San Francisco, CA 94102


FOR THE DEFENDANT:           JOSEPH PETER DRENNAN, ESQ.
                             218 North Lee Street, Third Floor
                             Alexandria, VA 22314


OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                             U.S. District Court, Third Floor
                             401 Courthouse Square
                             Alexandria, VA 22314
                             (703)299-8595


(Pages 1 - 14)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1              P R O C E E D I N G S

2              THE CLERK:  Civil Action 05-701, Farhan Mohamoud Tani

3    Warfaa v. Yusuf Abdi Ali.  Would counsel please note their

4    appearances for the record.

5              MR. BARNES:  Good morning, Your Honor.  Lindsay

6    Barnes.  I'm from the law firm of DLA Piper.  I represent the

7    plaintiff, Mr. Warfaa.  I'm here today with my colleagues, Ben

8    Klein, also from DLA Piper; and Kathy Roberts from the Center

9    for Justice & Accountability, both of whom have been admitted

10   pro hac.

11             THE COURT:  All right.  And, Mr. Drennan, you're here

12   for the defendant?

13             MR. DRENNAN:  Yes, Your Honor.  Joseph Peter Drennan

14   on behalf of the defendant.

15             THE COURT:  All right.  Well, actually, there's more

16   than one plaintiff involved in this case, is there not, or is

17   it just now Mr. Warfaa?

18             MR. BARNES:  Just Mr. Warfaa, Your Honor.

19             THE COURT:  Just one plaintiff, all right.  Well, you

20   know, obviously, I'm hoping that you-all have talked about the

21   status of things.  This case has certainly been on the docket a

22   long time.

23             As you know, it was -- we deferred a lot of this case

24   to see how the *Samantar* matter worked out.  The *Samantar* matter

25   is, as I understand it, completely resolved at this point, so

1  the question is where is this case?  Mr. Warfaa first of all is

2  in this country; is that correct?

3          MR. BARNES:  Mr. Warfaa is not in this country.

4          THE COURT:  At the lectern, please.

5          MR. BARNES:  Thank you.

6          THE COURT:  All right.  He is not here?

7          MR. BARNES:  No.

8          THE COURT:  He's back in Somalia?

9          MR. BARNES:  That's correct, Your Honor.

10          THE COURT:  All right.  Mr. Ali is in this country,

11  Mr. Drennan?

12          MR. DRENNAN:  He is indeed, Your Honor.

13          THE COURT:  All right.  How is your client employed?

14          MR. DRENNAN:  At the present time, he's not --

15          THE COURT:  Can you just be right there?

16          MR. DRENNAN:  Oh, I'm sorry, Your Honor.  At the

17  present time, he's not employed, Your Honor.  He was employed

18  with a government contractor until last year.  CNN ran a story

19  on this matter with some inflammatory coverage of his being

20  employed at Dulles Airport, and he lost his job, but he's, he's

21  presently supported by family and living in the area.

22          THE COURT:  All right.  Well, we need to get this

23  case resolved one way or the other.  I mean, in some cases,

24  these cases have been resolved through a settlement.

25  Otherwise, we need to litigate them.

4

1      So have you talked between yourselves as to how you

2 want to proceed at this time?

3      MR. BARNES:  We have, Your Honor.

4      THE COURT:  All right.

5      MR. BARNES:  We are ready for the case to proceed and

6 for the stay to be lifted.  There are just a few things, if I

7 may, that I'd like to bring to Your Honor's attention.

8      THE COURT:  All right.

9      MR. BARNES:  The first thing is that we would like

10 the Court to open discovery -- to wait to open discovery until

11 Friday, June 15.  As Your Honor may be aware, we're in the holy

12 month of Ramadan.  Practically speaking, we're not going to be

13 able to conduct any discovery until the end of Ramadan.

14      Our client is Muslim.  Most of the witnesses in this

15 case are Muslim.  So we would ask you to wait nine days before

16 opening discovery.

17      THE COURT:  Go ahead.

18      MR. BARNES:  Secondly, we would like an extended

19 discovery period.  Given the international component of this

20 case and given that it's going to take a little time for the

21 Department of Homeland Security to parole our client into the

22 country, we're asking --

23      THE COURT:  Wait.  Do you think that's going to

24 happen?  I have told you I've got some of these other cases

25 with people from this part of the world, and they're not

5

1   getting into the country.

2          MR. BARNES:  We do believe that that's going to

3   happen, Your Honor.  We've been in touch with the Department of

4   Homeland Security.  They're aware of this matter, and they're

5   aware of our client's need to be here for that matter, so we've

6   been in touch with them.

7          We, we anticipate that our client will be able to be

8   paroled into this country between one to three months.  We're

9   proposing a discovery period of 120 days, with the caveat that

10  if it appears that the Department of Homeland Security is going

11  to take longer with their process, we'll move for an extension

12  at that time.

13         THE COURT:  All right.  What else?

14         MR. BARNES:  Finally, we wanted to let Your Honor

15  know that we would be filing a consent motion to file an

16  amended -- motion for leave to file an amended complaint.  This

17  would be the second amended complaint, Your Honor.

18         We have a redline version if you'd like to see the

19  changes that we're going to make, and we will be attaching the

20  second amended complaint to our motion.  We're aiming to do, as

21  you'll see, Your Honor, two things.  We're fixing some

22  typographical and translation errors, and we're also stripping

23  out the claims and the material relating to the claims brought

24  under the Alien Tort Statute that Your Honor has already

25  dismissed.  We're just trying to make sure that we have the

1   cleanest, most focused, most straightforward version of the

2   complaint for the fact finder.

3        THE COURT:  All right.  Mr. Drennan, since counsel

4   described that as a consent motion, am I -- do I understand

5   that you're not opposing the filing of the second amended

6   complaint?

7        MR. DRENNAN:  No, Your Honor.  The representations

8   made are correct.  Essentially, I've looked at the redline

9   version, and it appears to be basically an amendment, as

10   counsel indicates, to remove the ATA, Alien Tort -- or ATS

11   claims from the amended complaint, and the rest of the matter

12   is, is essentially stylistic and immaterial, I think, so I'm

13   not opposed to that motion.

14        THE COURT:  All right.  Now, in terms of any legal

15   issues, most of the legal issues, I would assume, that were

16   applied in the *Samantar* case would apply to this case other

17   than perhaps the actual status of your client and how that

18   might relate to some of the issues, but other than that, are

19   there any other actually significant legal issues that may

20   differ from *Samantar*?

21        MR. DRENNAN:  Well, Your Honor, there's certainly

22   some similarity.  I mean, we have, we have pled earlier in this

23   case or raised issues about the, the statute of limitations

24   because of the untimeliness of the action having been brought,

25   and there were equitable tolling arguments that were raised by

1    the other side.

2            Those, those sorts of arguments were raised in the

3    *Samantar* case, Your Honor may recall having dealt with them,

4    but there -- whereas Samantar was in Italy, my client was in

5    Toronto.  We had many, many years ago, in fact, well over a

6    decade ago engaged an expert to opine about whether

7    Mr. Samantar could have been sued in Toronto.  So that's an

8    issue, a potential issue.

9            As -- Your Honor had inquired about the presence of

10   the defendant here in the -- or the nonpresence of the

11   defendant here.  We have insisted earlier in the case that

12   we -- if the case is to go forward, that we have the

13   prerogative of deposing the defendant in this district, as is

14   our right under the rules.

15           THE COURT:  Defendant or the plaintiff?

16           MR. DRENNAN:  Or the plaintiff, rather.  I'm sorry,

17   Your Honor, I misspoke.  The plaintiff, rather.  To depose the

18   plaintiff in this, in this district.

19           So the -- when we hear that the plaintiff is not here

20   but presumably will be here, paroled in at some point within

21   the next 120 days so that we can depose him, we don't have a

22   problem with that, but we don't want to, to have the door

23   opened to endless discovery or to have this matter stetted

24   again for a long period of time.

25           THE COURT:  Well, that's not going to happen.  I

8

1    mean, this case needs to be resolved.  Frankly, we should have

2    gotten it back on the docket sooner.  *Samantar* has been over

3    for some time and --

4              MR. DRENNAN:  Yes.  And this matter was up on a cert

5    petition and a cross-cert petition to the Supreme Court that

6    was, that was rejected, I believe, just about a year ago.

7              THE COURT:  Right.

8              MR. DRENNAN:  So -- and the Court knows well our

9    feelings about the -- or our standing with -- or stance,

10   rather, with regard to some of the legal issues in the case,

11   but Your Honor and, indeed, the Fourth Circuit have disagreed

12   with us.

13             THE COURT:  All right.

14             MR. DRENNAN:  So as long as the State Department or

15   the federal government has not weighed in and asked that the

16   case be dismissed, I think we're, we're kind of constrained to

17   have to go forward, but --

18             THE COURT:  Mr. Davis, have a seat.  We don't have

19   two attorneys standing.

20             MR. DRENNAN:  But the -- another, another issue, Your

21   Honor, that we believe should -- if the Court is inclined to,

22   to reopen discovery and set time limits, 120 days, we're not

23   opposed to that.  The, the only proviso in that regard would be

24   that recognition should be taken of the fact that plaintiff in

25   this -- or strike that.

9

1          The defendant in this case, Mr. Ali, has already been

2  deposed.  He was deposed in the spring of 2005, and when --

3  during one of those intervals over the years when the Court

4  entered the stay, and I think it was in the aftermath of the

5  *Kiobel* decision, the matter was referred to Magistrate Judge

6  Anderson, and at that initial conference there, the -- Judge

7  Anderson indicated that Mr. Ali shouldn't have to be re-deposed

8  if he was already deposed in the case.

9          So we would oppose him being re-deposed.

10          THE COURT:  Well, look, that's not before me right

11  now.  The reality of it is I would not permit and I know Judge

12  Anderson would not permit repetitious questioning.  However,

13  you know, this case is from the plaintiff's standpoint

14  partially about getting some kind of compensation for the

15  damages he claims he suffered as a result of your client's

16  conduct, and as a result, I think the financial situation of

17  your client over the past 10 or 12 years would certainly be

18  relevant.

19          MR. DRENNAN:  Sure.

20          THE COURT:  Now, whether that could be handled

21  through interrogatories rather than deposition, I don't know.

22  I certainly -- and I will talk to Judge Anderson about this

23  case as well.  It's in neither side's interests to

24  unnecessarily incur transaction costs.

25          The reality of this case is, you know, the plaintiff

1    may get a symbolic victory if he gets a judgment in his favor,

2    but in terms of actual dollars that might compensate him for

3    the injuries he's alleged, there may not be much there, and

4    that's a practical matter that plaintiff's counsel need to

5    think about.

6         You and your client need to think about, I mean, I

7    assume you're not doing this pro bono, maybe you are --

8         MR. DRENNAN:  No.

9         THE COURT:  -- but it's costing him some money.

10        So, you know, I don't know what his financial

11   situation is, and that would include, you know, whether he has

12   family resources.  I mean, if he's been responsible in part for

13   horrible injuries to this plaintiff, then there's at least a

14   moral if not a legal obligation to make compensation, and I

15   don't know whether, you know, either side is interested in

16   trying to work this case out.

17        In the *Samantar* case, did any of the plaintiffs get

18   any compensation?

19        MR. DRENNAN:  Nary a cent, Your Honor.

20        THE COURT:  Yeah.  And so the only people who

21   benefited from it, frankly, were the attorneys who may have

22   gotten some fees.  I know the plaintiffs are doing it pro bono,

23   and again, there are important principles in a case like this,

24   but the reality of it from an individual plaintiff's standpoint

25   is, you know, why go to all this trouble and why do all this

11

1   litigation if you're coming out with nothing?

2           So that's a way of teeing this case up for both sides

3   thinking pragmatically about whether there's some way of

4   resolving this case.  If your client is paying you money to

5   represent him, that money could go to this plaintiff.

6           And I don't know, you know, I don't have any idea

7   what Mr. Warfaa's situation is, but usually an American dollar

8   goes a lot further in some of those countries, and so what

9   might not look like a big judgment, I mean, getting $1 million

10  and not being able to collect a penny on it is not as valuable

11  as getting, say, $50,000 and be able to collect it, and I would

12  hope that plaintiff's counsel, you know, would think about the

13  plaintiff as a, as a person who may be in need for whom

14  immediate compensation could be much more valuable than more

15  months or years of litigation, because if it's anything like

16  the *Samantar* case, it did ultimately go to trial.  There was a

17  multi-million-dollar verdict, as I recall.

18           MR. DRENNAN:  By default.

19           THE COURT:  It was by default.

20           MR. DRENNAN:  Yes.

21           THE COURT:  And then there were still rounds of

22  appeals after that, as I recall, or did that end with just --

23           MR. DRENNAN:  That all, that all preceded the trial.

24           THE COURT:  All right.  I mean, there were so many

25  rounds --

12

1          MR. DRENNAN:  For the most part.

2          THE COURT:  Yeah.

3          MR. DRENNAN:  Oh, no, wait, I take that back.  I

4  stand corrected.  There, there was actually an argument before

5  the Fourth Circuit that was -- or an appeal before the Fourth

6  Circuit that was pending at the time of the, of the Court's

7  having the --

8          THE COURT:  Yeah.  That was the immunity issue, I

9  think.

10         MR. DRENNAN:  The immunity issue was still, was still

11 in the Fourth Circuit and was, was ultimately -- we ultimately

12 lost there, and we, we attempted to petition for -- we

13 petitioned for cert there, and the Supreme Court declined to

14 take it.

15         THE COURT:  All right.  So anyway, having said that,

16 I'm going to go ahead, we will issue our standard scheduling

17 order on June 15.  That does, in fact, have between 120 and 140

18 days.  It depends a little on how the calendar works.

19         So you're going to get the discovery time period that

20 you were requesting.  You will find that's our standard

21 scheduling order, that it's going to call for your -- you and

22 Mr. Drennan getting together before Judge Anderson with your

23 proposed discovery plan, but again, he will also probably talk

24 to you about whether it makes some sense to try to see if you

25 can settle this case, all right?

13

1             MR. DRENNAN:  All right, Your Honor.

2             MR. BARNES:  Yes, Your Honor.

3             THE COURT:  All right.  So we're back on the

4    docket -- on the calendar.  I'll issue an order that removes

5    the stay, gets things going, and you'll get the scheduling

6    order on the 15th of June.

7             MR. DRENNAN:  All right.  Thank you, Your Honor.

8             THE COURT:  All right?

9             MR. DRENNAN:  Your Honor, one last matter,

10   housekeeping matter, and I -- this is an item that we have

11   discussed, and that is, that we would just request that the

12   date for the pretrial be after the 1st of November.  That's

13   all.  I don't know how that -- I'm trying to do my mental

14   arithmetic here concerning the time frame for discovery, and

15   the reason for that is I have some, some family plans in

16   mid-October.  I have a daughter that lives abroad that I go to

17   see a couple times a year.

18            THE COURT:  And you said after November what?

19            MR. DRENNAN:  Anytime after November 1.

20            THE COURT:  All right.  I'll make sure we look at

21   that, all right?

22            MR. DRENNAN:  Thank you, Your Honor.

23            THE COURT:  Anything further on this case?  No?

24            MR. BARNES:  No, Your Honor.

25            THE COURT:  Then you're all free to go.

14

1          MR. BARNES:  Thank you, Your Honor.

2                         (Which were all the proceedings

3                          had at this time.)

4

5                    CERTIFICATE OF THE REPORTER

6      I certify that the foregoing is a correct transcript of

7  the record of proceedings in the above-entitled matter.

8

9

10  _____/s/_____

                              Anneliese J. Thomson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25