## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **FARHAN MOHAMOUD TANI WARFAA,** | : |
| **Plaintiff,** | : |
| versus | : Civil Action No.: 05-701 (LMB/BRP) |
| **YUSUF ABDI ALI,** | : |
| **Defendant.** | : |

***DEFENDANT'S MEMORANDUM ADDRESSING THE COURT'S REQUEST FOR AUTHORITY ON THE ISSUE OF WHETHER VEL NON PLAINTIFF'S EXPERT DR. DARYN REICHERTER SHOULD BE PERMITTED TO TESTIFY***

COMES NOW, before this Honorable Court, the Defendant in respect of the above- encaptioned cause, *viz.*, YUSUF ABDI ALI, by and through his undersigned attorney and counsellor, and pursuant to, *inter alia*, the request from this Honorable Court to the parties for legal authority in respect of the issue of whether, *vel non,* the proffered testimony from Plaintiff's expert known as Dr. Daryn Reicherter, should be presented to the jury. As this Honorable Court will recall, although, at the conclusion of yesterday's session of trial, Plaintiff's other medical expert, *viz.,* Dr. Allen Keller, was still on direct examination of Plaintiff's counsel, the undersigned raised with this Honorable Court certain concerns about the propriety of allowing Dr. Reicherter to testify in the instant case, citing to Dr. Reicherter's 9 January 2019 report, entitled "The Medical Consequences of Torture in Somaliland", which has been designated by the Plaintiff *qua* Exhibit PL065 (referenced hereinafter *qua* "Report"). In response to that challenge, this Honorable Court requested that the Plaintiff provide authority to support the admissibility of Dr. Reicherter as an expert, and, in response, Plaintiff's counsel cited two court cases, *viz.*: *Philip Morris v. Williams,* 549 U.S. 346 (2007); & *McGowan v. Murphy Brown, L.L.C.,* 2018 WL 2297506 (E.D.N.C. May 18, 2018), to which the Defendant now responds, *viz.*:

1. **The Report addresses principally the deleterious effects of torture in Somalia and elsewhere generally and only tangentially addresses the alleged injury to the Plaintiff.  Accordingly, the use of the Report would have the effect of encouraging the jury to award punitive damages against the Defendant for the injuries sustained by torture victims who are not before the Court.**

The Court has long made clear that "[p]unitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *Philip Morris USA v. Williams*, 549 U.S. 346, 352, 127 S. Ct. 1057, 1062, 166 L. Ed. 2d 940 (2007), as explained in the following passages from that opinion, *viz.*:

"In our view, the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, i.e., injury that it inflicts upon those who are, essentially, strangers to the litigation. For one thing, the Due Process Clause prohibits a State from punishing an individual without first providing that individual with "an opportunity to present every available defense." Lindsey v. Normet, 405 U.S. 56, 66, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) (internal quotation marks omitted). Yet a defendant threatened with punishment for injuring a nonparty victim has no opportunity to defend against the charge, by showing, for example in a case such as this, that the other victim was not entitled to damages *354 because he or she knew that smoking was dangerous or did not rely upon the defendant's statements to the contrary.

"For another, to permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation. How many such victims are there? How seriously were they injured? Under what circumstances did injury occur? The trial will not likely answer such questions as to nonparty victims. The jury will be left to speculate. And the fundamental due process concerns to which our punitive damages cases refer—risks of arbitrariness, uncertainty, and lack of notice—will be magnified. State Farm, 538 U.S., at 416, 418, 123 S.Ct. 1513; BMW, 517 U.S., at 574, 116 S.Ct. 1589.

"Finally, we can find no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others. We have said that it may be appropriate to consider the reasonableness of a punitive damages award in light of the potential harm the defendant's conduct could have caused. But we have made clear that the potential harm at issue was harm potentially caused the plaintiff."

*Philip Morris USA v. Williams*, 549 U.S. 346, 353–54, 127 S. Ct. 1057, 1063, 166 L. Ed. 2d 940 (2007)

2. **While the punitive damages issue of the reprehensibility of Defendant's alleged conduct may warrant testimony as to the harm caused to nonparties, the harm had to have been caused by Defendant and the Report makes no mention of any claim of injury by Defendant to others.**

"Respondent argues that she is free to show harm to other victims because it is relevant to a different part of the punitive damages constitutional equation, namely, reprehensibility. That is to say, harm to others shows more reprehensible conduct. Philip Morris, in turn, does not deny that a plaintiff

may show harm to others in order to demonstrate reprehensibility. Nor do we. Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public."

*Philip Morris USA v. Williams*, 549 U.S. 346, 355, 127 S. Ct. 1057, 1063–64, 166 L. Ed. 2d 940 (2007)

3. **The Report comments impermissibly on the political situation in Somalia as to which the expert does not purport to have scientific knowledge.**

"[T]he Siad Barre regime's engagement in torture practices on the people of Northern Somalia (Somaliland)...include[d] the targeting of civilians, primarily from the lsaaq clan in northern Somalia, now Somaliland, between 1987-1989.  An estimated 50,000-100,000 people lost their lives, and even more were displaced."

Report at pp. 1-2

4.  **The Report usurps the role of the jury in reciting that the Defendant was guilty of human rights abuses that the Plaintiff alleges as his case in chief.**

"The human rights abuses committed under the leadership of former Colonel Yusuf Abdi Ali [hereinafter Defendant Ali] of the Somali Army's Fifth Brigade created multiple mental health harms, physical harms, and social harms to the people of Somaliland such as Mr. Warfaa."

Report at p. 2.

5.  **The Report relies for its evidence of Plaintiff's physical condition upon the testimony of Plaintiff's physicians and not on any examination by Dr. Reicherter.  The conclusions are hence unreliable under Rule 703 and Daubert in that physical symptoms are typically evaluated only by a direct examination of the patient.**

"Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."

*Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 595, 113 S. Ct. 2786, 2797–98, 125 L. Ed. 2d 469 (1993)

6.  **The science of the Report does not have the reliability that *Daubert* requires.**

With respect to reliability, the district court must ensure that the proffered expert opinion is "based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. Gen. Motors Corp*., 190 F.3d 244, 250 (4th Cir. 1999). *Daubert* offered a number of guideposts to help a district court determine if expert testimony is sufficiently reliable to be admissible. First, "a key question to be answered in determining

3

whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." 509 U.S. at 593, 113 S.Ct. 2786. A second question to be considered by a district court is "whether the theory or technique has been subjected to peer review and publication." *Id*. Publication regarding the theory bears upon peer review; "[t]he fact of publication (or lack thereof) in a peer reviewed journal will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." *Id*. at 594, 113 S.Ct. 2786. Third, "in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error." *Id.* Fourth, despite the displacement of *Frye*, " 'general acceptance' " is nonetheless relevant to the reliability inquiry. *Id.* "Widespread acceptance can be an important factor in ruling particular evidence admissible, and a known technique which has been able to attract only minimal support with the community may properly be viewed with skepticism." *Id*. (citation and internal quotation marks omitted). Daubert's list of relevant considerations is not exhaustive; indeed, the Court has cautioned that this "list of specific factors neither necessarily nor exclusively applies to all experts or in every case,"

*Nease v. Ford Motor Co.,* 848 F.3d 219, 229 (4th Cir.), *cert. denied*, 137 S. Ct. 2250, 198 L. Ed. 2d 680 (2017).

7. **The Report recites that it represents the conclusion not of the expert alone but of a program with which he is affiliated. This Report by its terms was a committee effort but the other authors are unidentified. "Unquestionably, Rule 26 requires an expert witness to prepare his own Rule 26 Report."** *Trigon Ins. Co. v. United States***, 204 F.R.D. 277, 291 (E.D. Va. 2001)**

"This report was created by Dr. Daryn Reicherter, with the support of the Human Rights in Trauma Mental Health Program (HRTMHP), an interdisciplinary program based at Stanford…" Report, at p. 1.

"In addition to our members' abundant clinical and professional experience with survivors' psychology, the HRTMHP relied upon the vast scientific literature in psychology to reach the major conclusions of this report."  Report, at p. 2.

4

8**. Plaintiff's reliance on *McGowan v. Murphy Brown, L.L.C.*, 2018 WL 2297506 (E.D.N.C. May 18, 2018) is inapposite.**

*McGowan,* a nuisance case arising out of the stench emanating from a hog farm, and a fear of future harm from that nuisance, offers no support for Plaintiff's position here, as there can be no basis for anyone, much less the Plaintiff, or, for that matter, anyone else in Somalia, need harbor any fear of some supposed future harm. In deigning to make such a contention, Plaintiff appears to be seeking some sort of victimhood status, not just for him, but for his Issaq clan, which is precisely to sort of group grievance appeal that the Plaintiff, and his representatives have been making in extrajudicial statements throughout the course of this litigation.

WHEREFORE, and for the foregoing reasons, the Defendant ever prays that Dr. Reicherter not be permitted to give evidence in the instant trial.

Dated: 15 May 2019, at Alexandria, Virginia.

        Respectfully submitted,

        /s/Joseph Peter Drennan
        **JOSEPH PETER DRENNAN**
        218 North Lee Street
        Third Floor
        Alexandria, Virginia 22314
        Telephone: (703) 519-3773
        Telecopier: (703) 997-2591
        E-mail: joseph@josephpeterdrennan.com
        Virginia State Bar No. 023894

        Attorney and Counsellor for Defendant

## *CERTIFICATE OF SERVICE*

I, Joseph Peter Drennan, undersigned, hereby and herewith certify that, on this 15th day of May 2019, a true, xerographic facsimile of the foregoing was despatched electronically, by CM/ECF, to each of the following, *viz.*:

Lindsay R. Barnes III, Esquire [ Lindsay.Barnes@dlapiper.com ]
Louis Ramos, Esquire [ Louis.Ramos@dlapiper.com ]
Benjamin D. Klein, Esquire [ Ben.Klein@dlapiper.com ]
DLA Piper LLP (US)
500 Eighth Street, N.W.
Washington, D.C. 20004;

Joseph C. Davis, Esquire [Joe.Davis@dlapiper.com ]
DLA Piper LLP (US)
11911 Freedom Drive, Suite 300
Reston, Virginia 20190; &

L. Kathleen Roberts, Esquire [ kroberts@cja.org ]
Nushin Sarkarati, Esquire [nsarkarati@cja.org ]
Carmen Cheung, Esquire
Center for Justice & Accountability
One Hallidie Plaza, Suite 406
San Francisco, California 94102.

    Respectfully submitted,

    /s/Joseph Peter Drennan
    **JOSEPH PETER DRENNAN**
    218 North Lee Street
    Third Floor
    Alexandria, Virginia 22314
    Telephone: (703) 519-3773
    Telecopier: (703) 997-2591
    E-mail: joseph@josephpeterdrennan.com
    Virginia State Bar No. 023894

    Attorney and Counsellor for Defendant