**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1668

FARHAN MOHAMOUD TANI WARFAA,

    Plaintiff – Appellee,

  v.

YUSUF ABDI ALI,

    Defendant – Appellant.

No. 19-1675

FARHAN MAHAMOUD TANI WARFAA,

    Plaintiff – Appellee,

  v.

YUSUF ABDI ALI,

    Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:05-cv-00701-LNB-JFA)

Argued:  March 11, 2021                                                    Decided:  June 17, 2021

Before GREGORY, Chief Judge, AGEE, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Chief Judge Gregory and Judge Diaz joined.

**ARGUED:** Joseph Peter Drennan, Alexandria, Virginia, for Appellant. Paul Daniel Schmitt, DLA PIPER US LLP, Washington, D.C., for Appellee. **ON BRIEF:** Courtney G. Saleski, Benjamin D. Klein, DLA PIPER US LLP, Washington, D.C.; Carmen K. Cheung, Nushin Sarkarati, Elzbieta T. Matthews, CENTER FOR JUSTICE & ACCOUNTABILITY, San Francisco, California, for Appellee.

AGEE, Circuit Judge:

Consistent with a jury verdict, the district court entered judgment against Yusuf Abdi Ali on Farhan Mohamoud Tani Warfaa's claim of torture under the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note). On appeal, Ali does not challenge the underlying finding of culpability, but rather asserts that the district court erred in granting partial summary judgment in favor of Warfaa on Ali's defense that the statute of limitations barred the claim because Warfaa was not entitled to equitable tolling. Finding no error, we affirm the district court's judgment.

I.

We previously described the underlying allegations, complicated procedural history, and country conditions giving rise to this case when we decided an interlocutory appeal of several issues resolved at the motion-to-dismiss stage. *Warfaa v. Ali*, 811 F.3d 653, 655–57 (4th Cir. 2016).

In sum, during a period of significant political unrest in Somalia, military dictator Mohamed Siad Barre controlled the country and facilitated mass killing, torture, and property destruction of targeted clans. Ali commanded a pro-Barre battalion of the Somali National Army stationed in the area where Warfaa resided. Warfaa's clan was among the groups targeted for abuse by Barre's forces and Warfaa alleged that Ali was directly and indirectly responsible for numerous acts of violence committed against him in the late 1980s.

3

In November 2004, Warfaa—then acting anonymously—filed a civil action against Ali in the United States District Court for the Eastern District of Virginia alleging multiple claims based on acts committed against him in Somalia. On April 29, 2005, Warfaa voluntarily dismissed the action without prejudice.

In June 2005, Warfaa refiled his complaint in the same court, alleging numerous claims based on both the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the TVPA. The district court resolved several claims and defenses at the motion-to-dismiss stage, which the parties then cross-appealed in an interlocutory appeal. We affirmed the district court's dismissal of Warfaa's claims brought under the ATS and its denial of foreign official immunity. *Warfaa*, 811 F.3d at 655.

Relevant to the current appeal, the district court had denied Ali's motion to dismiss the TVPA claims based on the defense of the statute of limitations. To support that decision, the court provided numerous reasons why it concluded Warfaa had demonstrated extraordinary circumstances justifying equitable tolling of the applicable ten-year limitations period. At the outset, the court observed that permitting tolling would be consistent with the TVPA's legislative history and underlying policy.[1] *Warfaa v. Ali*, 33 F. Supp. 3d 653, 664 (E.D. Va. 2014) ("[A]bsent a remedy in courts of the United States, some of the most egregious cases of human rights violations might go unheard because the

---

[1] The TVPA "authorizes a cause of action against an individual for acts of torture and extrajudicial killing committed under authority or color of law of any foreign nation." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 451 (2012) (alteration and internal quotation marks omitted); *see* TVPA § 2(a), 28 U.S.C. § 1350 note.

4

regimes responsible often possess the most inadequate legal mechanisms for providing redress.").

In assessing Warfaa's circumstances, the district court concluded that the allegations of Somalia's "sectarian violence and political upheaval" constituted extraordinary circumstances warranting equitable tolling. *Id.* In particular, it observed that the complaint alleged Barre's regime committed "human rights abuses throughout the 1980s," "that the civil war following the overthrow of Barre's regime in 1991 pushed Somalia into a state of 'increasing chaos,' resulting in 'the killing, displacement, and mass starvation of tens of thousands of Somali citizens,'" *id.*, and that conditions somewhat improved in 1997 when the regional government of Somaliland acquired semiautonomous status.

Based on this historical foundation, the court reasoned that Warfaa had sufficiently alleged facts establishing "that it was impossible for him to file suit until at least 1997, when the extraordinary circumstances finally abated such that he could pursue his cause of action without fear in the United States or elsewhere." *Id.* at 665. Because Warfaa originally filed suit in 2004, the court concluded it was timely and denied Ali's motion to dismiss.

As a separate basis for denying the motion to dismiss, the district court concluded tolling was appropriate for the periods in which Ali did not live in the United States and thus was not subject to personal jurisdiction in United States courts. The court also observed that the complaint alleged that Ali lived in the United States from 1992 to July 1994 and then continuously since December 1996, a period amounting to "slightly less

5

than ten years." *Id.* For that reason, too, the court concluded Warfaa's claim should not be dismissed as untimely.

Ali did not properly challenge the district court's decision as to the timeliness of Warfaa's claims in the interlocutory appeal. Specifically, because Ali challenged that determination in only one sentence of his appellate brief, the Court concluded he waived appellate review of the denial of his motion to dismiss on this ground. *Warfaa*, 811 F.3d at 657 n.5.

After we affirmed in the interlocutory appeal, Warfaa filed a second amended complaint in district court alleging two claims under the TVPA: torture and attempted extrajudicial killing. Ali again raised the TVPA's 10-year statute of limitations as a defense. *See* TVPA § 2(c), 28 U.S.C. § 1350 note. Warfaa moved for partial summary judgment, requesting that the district court determine that the statute of limitations had not run on his claims given that extraordinary circumstances supported equitable tolling.

At the hearing, the court reflected on its prior ruling at the motion-to-dismiss stage and concluded that although it could overturn that decision should the evidence require, no "factual issues [were] brought to [its] attention that would undermine [its] initial evaluation of the statute of limitations" and its prior conclusion that Warfaa was entitled to equitable tolling. J.A. 283–84. For the same reasons previously "announced in [the ruling on] the motion to dismiss," and given "the fact that there [wa]s at th[at] point no evidence before the [c]ourt that would undermine the foundation for" that ruling, the district court granted Warfaa's motion for partial summary judgment. J.A. 285.

6

Warfaa's claims proceeded to trial and the jury returned a verdict finding Ali liable for torture, but not attempted extrajudicial killing, under the TVPA. It awarded Warfaa $500,000 in damages, comprised of $400,000 in compensatory damages and $100,000 in punitive damages. The district court entered judgment consistent with that verdict.

Ali noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

II.

The sole issue on appeal is whether the district court erred in granting partial summary judgment against Ali on his statute of limitations defense. Ali points to a general reluctance by courts to rely on equitable tolling, arguing that the district court relied on circumstances that were too general and unparticularized to warrant equitably tolling the statute of limitations. In addition, he asserts that the undisputed evidence establishes that he lived in the United States for more than 10 years before Warfaa refiled his complaint in June 2005. Relatedly, he contends that June 2005 is the operative date for establishing timely filing because Warfaa is not entitled to rely on his original, anonymously filed complaint in 2004. Having reviewed the parties' arguments and the record, we affirm the district court's conclusion that equitable tolling applies to Warfaa's claims and, therefore, that his claims are timely.

The Court reviews a district court's grant of summary judgment de novo, "view[ing] the evidence in the light most favorable to the non-moving party and draw[ing] all reasonable inferences in that party's favor." *Cybernet, LLC v. David*, 954 F.3d 162, 167–68 (4th Cir. 2020); *see* Fed. R. Civ. P. 56(a) (stating summary judgment is appropriate "if

7

the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law"). After a movant satisfies his initial burden to present evidence demonstrating the absence of a genuine issue, the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted). The Court's inquiry centers on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

  To the extent the district court's decision on equitable tolling rests on factual determinations, we review for abuse of discretion. *Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). When, however, the district court's equitable tolling ruling is based not on "the existence of certain facts, but instead rests on whether those facts demonstrate a failure to bring a timely claim, resolution of this challenge turns on questions of law which are reviewed *de novo*." *Cruz v. Maypa*, 773 F.3d 138, 143 (4th Cir. 2014) (alteration and internal quotation marks omitted).

  The parties do not dispute that the TVPA is subject to a ten-year statute of limitations from the date the cause of action arose, TVPA § 2(c), 28 U.S.C. § 1350 note, and that the limitations period is subject to equitable tolling, *see* S. Rep. No. 102-249, at 10–11 (1991) (calling for equitable tolling of TVPA claims "with a view toward giving justice to plaintiff's rights"); H.R. Rep. No. 102-367, at 5 (1991) (recognizing that "equitable tolling remedies may apply to preserve a claimant's rights" under the TVPA in

8

certain circumstances, such as when "a defendant fraudulently conceals his or her identification or whereabouts from the claimant"); *see also Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990) (recognizing that "in lawsuits between private litigants," statutes of limitations "are customarily subject to 'equitable tolling'"); *Chavez v. Carranza*, 559 F.3d 486, 492–94 (6th Cir. 2009) (adopting TVPA limitations period for claims under the ATS and applying equitable tolling); *Hilao v. Estate of Marcos*, 103 F.3d 767, 773 (9th Cir. 1996) (applying equitable tolling to ATS claim); *Jean v. Dorelien*, 431 F.3d 776, 779 (11th Cir. 2005) (applying equitable tolling to TVPA claim).

Equitable tolling is "a discretionary doctrine that turns on the facts and circumstances of a particular case." *Harris v. Hutchison*, 209 F.3d 325, 330 (4th Cir. 2000) (internal quotation marks omitted). For equitable tolling to apply, a litigant must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (internal quotation marks omitted). "[C]onsidered an extraordinary remedy in this [Court], . . . litigants face a considerable burden to demonstrate that it applies." *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015). Its invocation "must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris*, 209 F.3d at 330.

Ali is correct that Warfaa faced a high hurdle to show entitlement to equitable tolling, but high does not mean insurmountable. The district court did not err in concluding

9

that Warfaa cleared this barrier to recovery. Courts addressing the TVPA and its "companion" statute, the ATS, have almost universally found equitable tolling appropriate where civil war and repressive authoritarian regimes significantly impeded a plaintiff's access to a judicial remedy for claims of torture and related human rights abuses. *E.g.*, *Chavez*, 559 F.3d at 493–94 (holding that equitable tolling of TVPA and ATS claims was appropriate until national elections were held in El Salvador because the prior regime and unrest made it unsafe for plaintiffs to seek judicial relief absent fear of reprisal to themselves or their families); *Arce v. Garcia*, 434 F.3d 1254, 1263–65 (11th Cir. 2006) (approving tolling through the fall of El Salvador's military regime, even after the parties moved to the United States, because plaintiffs could not obtain evidence or pursue claims earlier without fearing reprisal against friends and family remaining in El Salvador); *Jean*, 431 F.3d at 780–81 (holding that allegations of the Haitian military regime's "pattern and practice of torture, mass murder, intimidation and reprisals against perceived opponents" warranted tolling of the statute of limitations through removal of defendant from position in the military, dismantling of repressive security forces, and resumption of democratic government); *Hilao*, 103 F.3d at 773 (approving equitable tolling during a dictatorship because evidence showed that the dictator granted himself immunity and controlled the judiciary such that the regime's torture victims generally refused to report human rights abuses due to fear of reprisal).

This line of authority recognizes that regimes committing egregious human rights violations don't ordinarily foster legal systems in which those abuses can be redressed, so permitting tolling until claimants have the ability to both compile evidence supporting their

claims and pursue claims without fear of reprisal falls within the purpose of equitable tolling specifically and the TVPA more generally. *See Arce*, 434 F.3d at 1261–65. Indeed, as the Eleventh Circuit observed, the "remedial scheme [of the TVPA and ATS] . . . would fail if courts allowed the clock to run on potentially meritorious claims while the regime responsible for the heinous acts for which these statutes provide redress remains in power, frightening those who may wish to come forward from ever telling their stories." *Id.* at 1265.

These principles demonstrate the flaw in Ali's assertion that the district court could not, as a matter of law, find that equitable tolling was appropriate absent proof of necessity or threat particular to Warfaa's claims. While such specific evidence has been used toward establishing a plaintiff's burden, *e.g.*, *Jean*, 431 F.3d at 780, neither the doctrine of equitable tolling nor the cases applying it to this context require it. Instead, the focus for whether tolling is warranted has appropriately been on the state of civil unrest and general lack of access to a legal remedy. *E.g.*, *id.* at 781 (citing a general "pattern and practice of torture, mass murder, intimidation and reprisals" as sufficient to support tolling).

Applying these principles to the record, we readily conclude that the district court did not err in determining that Warfaa's unrebutted evidence demonstrated extraordinary circumstances justifying equitable tolling. Warfaa relied principally on an expert witness

report prepared by Martin R. Ganzglass, an attorney who has written extensively about Somalia and other African countries.[2]

Ganzglass explained that the Barre dictatorship "simply ignored all laws in cases involving political prisoners, dissidents, or alleged opponents," sometimes imprisoning such individuals "without charge or trial . . . under brutal conditions for years." J.A. 118–19. He also stated that after Barre's defeat, Somalia fell into chaos. Its central government collapsed and "disintegrated into regions or districts, controlled by warlords using clan-based militias to practice extortion, murder, rape, and robbery." J.A. 114–15.

In particular, Ganzglass recounted the government's inability to provide security and maintain a functioning court system in all regions. He further opined on the risk of retaliation to Warfaa and his family, given the specific problems with bringing a claim involving human-rights abuses perpetrated by former officials of the dictatorship, even though Barre was no longer in power. These unfavorable conditions persisted until at least 1997 and even to some degree until 2018, the date of his expert opinion.[3]

---

[2] Ganzglass represented the Embassy of the Somali Democratic Republic in the United States and the Somali Ministry of Mineral and Water Resources for over a decade, and, in 1993, served as Special Assistant to U.S. Ambassador (to Somalia) Robert Gosende and to Admiral Jonathan Howe, the Special Representative for Somalia to U.N. Secretary General Boutros Boutros-Ghali.

[3] In 1997, the regional government of Somaliland achieved semiautonomous status and some stability to the region returned. Even accepting the 1997 date, Warfaa's claims would be timely, so it's unnecessary to decide the exact point between 1997 and the filing of his complaint when conditions improved sufficiently for him to no longer be entitled to equitable tolling.
Similarly, with the 10-year limitations period beginning in 1997, Warfaa's claims would be timely whether or not the cut-off point was when he filed the original 2004

Ali tendered no expert or other relevant evidence to refute Warfaa's evidence or to support his position that Warfaa was not entitled to equitable tolling. Tellingly, Ali admitted in his deposition that the post-Barre chaos and violence that persisted in his country led him to file for asylum in Canada in March 1993. J.A. 246–47 ("I was fearing for my life. . . . [After the Barre regime] fell down, the whole country was chaos, just bandits, warlords. So I was [in] fear of my life."); J.A. 251 (reiterating that the same grounds led him to seek asylum in the United States).

Instead of coming forward with evidence to support his view that Warfaa could have pursued his claims earlier, Ali relied on speculation and conjecture that Warfaa could have pursued his claim in a refugee camp in Ethiopia or by traveling to the United States within the TVPA's ten-year limitations period. But "[m]ere unsupported speculation" is insufficient to defeat a properly supported summary judgment motion. *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). And the unrefuted evidence shows that even if Warfaa had an opportunity to file his claims in the United States during this period, he could not have done so safely given the continued danger to him and his family in Somalia.

All told, Warfaa presented credible evidence that he lacked realistic access to a legal remedy during and after the Barre regime given the absence of a functioning government,

---

complaint that was dismissed without prejudice or the 2005 complaint. As such, we need not resolve which is the operative complaint for determining the timeliness of Warfaa's claims.

widespread chaos and violence, and the risk of reprisal. We therefore agree with the district court that Warfaa satisfied his burden of showing the appropriateness of equitably tolling the limitations period until at least 1997.[4]

III.

For the reasons stated, we affirm the district court's judgment.

*AFFIRMED*

---

[4] Given our agreement that extraordinary circumstances justify equitable tolling of the limitations period, we need not address the parties' arguments about the district court's alternative ruling that Warfaa's claims would also be timely because Ali had been subject to the personal jurisdiction of United States courts for fewer than ten years.

In addition, in his Reply Brief, Ali raises for the first time the argument that Warfaa failed to show diligence to support his request for equitable tolling. Because he failed to raise this issue in the district court (not to mention in his opening brief), this issue is not properly before us, and we do not consider it. *See In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) (observing that the Court generally "will not accept on appeal theories that were not raised in the district court").